57 F.3d 1077
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Gustabo GONZALES-SOLIS, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 94-70080.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 11, 1995.
Decided May 26, 1995.
 
 Before: POOLE, BOOCHEVER, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Gustabo Gonzales-Solis seeks review of the Board of Immigration Appeals' ["BIA"] affirmance of the Immigration Judge's ("IJ") denial of his applications for registry, suspension of deportation, and waiver of inadmissibility, and its reversal of the IJ's grant of voluntary departure.
 
 
 3
 This court reviews the BIA's decision, rather than that of the IJ. See Hartooni v. INS, 21 F.3d 336, 340 (9th Cir. 1994). When the BIA defers to the IJ, however, for example in reviewing the IJ's finding that a witness was not credible, this court reviews both the BIA's and the IJ's findings for substantial evidence, giving substantial deference to the IJ's observations where supported by a specific reason for the disbelief. See Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992).
 
 
 4
 The BIA's decision that Gonzales' lack of good moral character made him statutorily ineligible for suspension of deportation, registry, and voluntary departure also is reviewed under a substantial evidence standard. See Hernandez-Luis v. INS, 869 F.2d 496, 498 (9th Cir. 1989); Mabugat v. INS, 937 F.2d 426, 431 (9th Cir. 1991). Reversal for lack of substantial evidence is justified "only where the evidence presented by the applicant would compel any reasonable factfinder to reach a contrary result." Hartooni, 21 F.3d at 340.
 
 
 5
 The BIA's legal findings, such as the mootness of Gonzales' application for waiver of inadmissibility, are reviewed de novo. See id.
 
 I. Good moral character
 
 6
 The statutory registry provision states that a record of lawful admission for permanent residence may be made for an alien who establishes that he entered the United States before January 1, 1972, has lived here continuously since, is a person of good moral character, and is not otherwise ineligible for citizenship. See 8 U.S.C. Sec. 1259 (emphasis added). 8 U.S.C. Sec. 1254(a)(1), the section providing for suspension of deportation for an alien who has been physically present in the United States for the last seven years and whose deportation would result in extreme hardship to a wife or child who is a United States citizen, also requires that the alien have been a person of good moral character for those seven years. Finally, 8 U.S.C. Sec. 1254(e)(1) allows voluntary departure in lieu of deportation to an alien who has been, for at least the last five years, a person of good moral character.
 
 
 7
 The BIA found that Gonzales did not have the good moral character required for each of the above types of relief, because Gonzales had not testified truthfully about his part in a scheme to provide fraudulent documents to aliens applying for amnesty. There is no doubt that giving false testimony precludes a finding of good moral character. The section defining "good moral character" specifically excludes "one who has given false testimony for the purpose of obtaining any benefits under this chapter." 8 U.S.C. Sec. 1101(f)(6). The only remaining question on appeal is whether there was substantial evidence that Gonzales did not testify truthfully.
 
 
 8
 In his 1988 sworn statement, Gonzales stated that he began selling false residency documents early that year. Other participants in the scheme would send Gonzales verification of residence letters, certifying that an applicant lived at one of Gonzales' rented properties, and Gonzales would sign them, charging each applicant for amnesty from $20 to $60. None of the applicants actually lived in Gonzales' properties.
 
 
 9
 In contrast, at his deportation hearing, Gonzales first testified that he signed amnesty documents only for his tenants. When cross-examined further, he explained that he forgot who lived in his properties. After admitting that he sold the documents for as much as $60, Gonzales then swore that he did it for no money. He next said that he made some pay him, as partial compensation for damage done to his rental properties. He later added that he realized only later that some of the people whose documents he signed had not actually rented from him, although he subsequently characterized his actions as an attempt to help poor people who came up from Mexico. Following this testimony, the judge indicated that he would make his own credibility determination based on the testimony, his notes, the inconsistencies, and Gonzales' general demeanor.
 
 
 10
 The IJ found: "Whenever given the alternative of telling the embarrassing truth or an exculpatory lie, [Gonzales] chose to perjure himself. He invariably insisted that his infractions were innocent mistakes, but would admit his serious involvement only when confronted by the Trial Attorney with incriminating evidence." The IJ gave specific examples, emphasizing that Gonzales first stated he sold documents only to tenants, then admitted otherwise, and finding Gonzales' claim that he did it out of the goodness of his heart "[t]he height of [Gonzales'] duplicity."
 
 
 11
 Gonzales argues that the BIA should have balanced favorable factors, such as his acceptance of responsibility in entering into the Pretrial Diversion Agreement, and his compliance with the agreement, against his false testimony. The BIA decision did mention these factors, but found that the failure to testify truthfully precluded a finding of good moral character. Because Gonzales' false testimony falls within 8 U.S.C. Sec. 1101(f)(6), which states that no person giving false testimony to obtain benefits under the statute shall be found to be of good moral character, no balancing was necessary or even appropriate. Conduct falling into any of Sec. 1101(f)'s eight categories precludes an alien from establishing good moral character. See Torres-Guzman v. INS, 804 F.2d 531, 533 (9th Cir. 1986).
 
 
 12
 Gonzales also argues that the IJ did not allow him to testify directly about his involvement in the signing of the false documents. The record shows, however, that Gonzales' counsel waived direct examination at the hearing.
 
 
 13
 We find there is substantial evidence in the record to support the IJ's and BIA's finding that Gonzales gave false testimony to gain benefits under the statute. Because that conduct is by definition a showing of a lack of good moral character, Gonzales was not entitled to relief under the sections of the statute requiring good moral character for relief from deportation.
 
 II. Voluntary departure
 
 14
 Gonzales argues that the BIA did not have jurisdiction to reverse the IJ's grant of voluntary departure, where the INS did not oppose voluntary departure before the IJ and did not appeal the grant to the BIA.
 
 
 15
 "In reviewing whether the Board properly denied an applicant voluntary departure, we may examine only whether the Board actually exercised its discretion and whether it did so in an arbitrary and capricious manner. The Board need only support its conclusion with a reasoned explanation based on legitimate concerns." Abedini v. INS, 971 F.2d 188, 193 (9th Cir. 1992) (as amended) (citations and quotations omitted). The BIA's explanation for denying voluntary departure satisfies these requirements; the decision makes clear that voluntary departure is statutorily barred by Gonzales' lack of good moral character, as demonstrated by his untruthfulness at the hearing. See De la Cruz v. INS, 951 F.2d 226, 228-29 (9th Cir. 1991) (Attorney General has no discretion to allow voluntary departure when statutory ineligibility has been demonstrated).
 
 
 16
 Gonzales argues that the BIA could not review the grant of voluntary departure, because the INS did not oppose it below or appeal the grant to the BIA. The BIA, however, is not limited in its review of the IJ's decision by what the INS presents to it in answer to an alien's appeal from the IJ's decision. The BIA "has the power to conduct a de novo review of the record, to make its own findings, and independently to determine the legal sufficiency of the evidence." Charlesworth v. INS, 966 F.2d 1323, 1325 (9th Cir. 1992) (quoting Elnager v. INS, 930 F.2d 784, 787 (9th Cir. 1991)). We find the BIA could make an independent, de novo review of the record to conclude that voluntary departure was not statutorily permitted. See Sagermark v. INS, 767 F.2d 645, 648 (9th Cir. 1985) (court of appeals has jurisdiction to review issue not appealed by alien to BIA, where BIA addressed issue thoroughly enough to satisfy policy that alien must exhaust administrative remedies, so that administrative agency can correct its own errors before judicial intervention), cert. denied, 476 U.S. 1171 (1986); Ghassan v. INS, 972 F.2d 631, 635 (5th Cir. 1992) (BIA could address issue not raised by INS on alien's appeal from IJ's finding), cert. denied, 113 S. Ct. 1412 (1993).
 
 
 17
 III. Waiver of criminal grounds of inadmissibility
 
 
 18
 The BIA found that Gonzales' argument that he was entitled to a waiver of the criminal grounds for inadmissibility under 8 U.S.C. Sec. 1182(h) was moot. Even if the criminal grounds for inadmissibility were waived, the BIA stated that Gonzales was inadmissible for other reasons, i.e. his lack of good moral character, which mandated denial of the relief he sought under the other sections of the immigration law.
 
 
 19
 An alien seeking to have a record of lawful admission made must demonstrate as a prerequisite that he is not inadmissible as a criminal under Sec. 1182. See 8 U.S.C. Sec. 1259. When the alien is not entitled to have such a record made for other reasons, in this case because he is not of good moral character as required by Sec. 1259(c), the need for a waiver of the criminal grounds of inadmissibility no longer exists, and the alien's application for relief under Sec. 1182(h) becomes moot. See Matter of De Lucia, 11 I. & N. Dec. 565, 575 (BIA 1966), aff'd, De Lucia v. INS, 370 F.2d 305 (7th Cir. 1966), cert. denied, 386 U.S. 912 (1967). We find that the BIA did not err in considering this issue moot.
 
 CONCLUSION
 
 20
 We AFFIRM the BIA's decision.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3