86 F.3d 1163
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Edgard J. SOLORZANO-LOPEZ, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70880.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 11, 1996.*
Decided May 21, 1996.
 
 Before: SNEED, NORRIS, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Edgar J. Solorzano-Lopez petitions for review of a Board of Immigration Appeals ("Board") decision denying his applications for asylum and withholding of deportation. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we deny review.
 
 I.
 FACTUAL & PROCEDURAL BACKGROUND
 
 3
 Solorzano-Lopez is a 32-year-old native and citizen of Nicaragua. He entered the United States without inspection at San Ysidro, California, on July 18, 1984. On August 16, 1989, the Immigration & Naturalization Service ("INS") issued an Order to Show Cause charging him with deportability under section 241(a)(2) of the Immigration & Nationality Act ("the Act"), 8 U.S.C. § 1251(a)(2).[1]
 
 
 4
 At a hearing before an Immigration Judge ("IJ") on September 17, 1990, Solorzano-Lopez admitted the factual allegations and conceded deportability, and the IJ designated Nicaragua as the country of deportation. Based on the following facts, Solorzano-Lopez requested asylum, withholding of deportation, and in the alternative, voluntary departure.
 
 
 5
 Solorzano-Lopez's father, aunt, and uncle all belonged to the Liberal Party during the Somoza regime. His aunt and uncle were jailed by the Sandinistas from 1979 until 1981, when they were released and allowed to leave the country. Beginning in 1981, Solorzano-Lopez himself became politically active, joining the Youth Propaganda Department of the Nicaraguan Democratic Movement and refusing to participate in Sandinista activities. A student at the time, he was harassed by members of the Sandinista Youth at school, and his family's house was spray-painted with pro-Sandinista, anti-Contra slogans.
 
 
 6
 In June 1983, a friend helped Solorzano-Lopez to obtain a job with TELCOR, the Nicaraguan government telecommunications agency. However, he soon drew attention at work by refusing to participate in Sandinista activities, and his friend threatened to fire him. His neighborhood Sandinista Defense Committee ("CDS") also threatened him, and in July 1983, his food ration card was reduced by half, forcing him to buy food on the black market. In September 1983, the ration card was taken away entirely. In November 1983, he was fired for his refusal to support the Sandinistas.
 
 
 7
 While walking home from a movie that same month, Solorzano-Lopez was accosted by a mob of Sandinista youths ("turbas divinas") and beaten badly enough to require medical attention. He was called a "contra, reactionary," and told "this is just a warning. The next time it's going to be worse." One month later, he obtained a passport by fabricating a story about needing to visit his sick sister in Mexico, and left the country. Solorzano-Lopez testified that after he left, Sandinista soldiers went to his house looking for him in order to conscript him into the army.
 
 
 8
 Solorzano-Lopez also testified that he is divorced, with a daughter who was born in Nicaragua in 1983. He now lives with his girlfriend, a temporary resident whom he plans to marry, and they have a son who is a United States citizen.
 
 
 9
 At the hearing, Solorzano-Lopez introduced without objection from the INS several 1990 news articles that discuss the continuing political and economic turbulence in Nicaragua since the election in April 1990 of President Violeta Chamorro. He testified that despite the change in government, "the [S]andinistas, they've still got the powers, you know. They've got the guns."
 
 
 10
 The IJ found Solorzano-Lopez's evidence insufficient to support a finding of persecution or a well-founded fear of future persecution. The IJ therefore denied the applications for asylum and withholding of deportation, but granted him voluntary departure. The Board affirmed these findings and dismissed the appeal. Solorzano-Lopez timely filed this petition for review.
 
 II.
 DISCUSSION
 A. Legal Standards
 
 11
 1. Asylum.
 
 
 12
 Under section 208(a) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1158(a), the Attorney General has the discretion to grant political asylum to an alien whom the Attorney General determines to be a refugee within the meaning of section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A). That section defines a refugee as:
 
 
 13
 any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to ... that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]
 
 
 14
 An asylum application under section 208(a) is a two-step process: first, the applicant bears the burden of establishing his statutory eligibility; second, the Attorney General exercises her discretion in deciding whether asylum is warranted. Diaz-Escobar v. INS, 782 F.2d 1488, 1491 (9th Cir.1986).
 
 
 15
 Statutory eligibility may be based on either past persecution or a well-founded fear of future persecution. Singh v. Ilchert, 63 F.3d 1501, 1505 (9th Cir.1995). The well-founded fear standard contains both subjective and objective components. Singh, 63 F.3d at 1506. The subjective component requires that the applicant's fear of persecution be genuine. Id. "The objective component requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that the petitioner faces persecution." Diaz-Escobar, 782 F.2d at 1492.
 
 
 16
 We review for substantial evidence the factual findings underlying the Board's determination whether an alien has proved persecution or a well-founded fear of persecution. Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir.1995). We may reverse the Board's determination of statutory eligibility only if the evidence is such that a reasonable factfinder would be compelled "to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Fisher v. INS, 79 F.3d 955, 961 (9th Cir.1996) (en banc). A denial of asylum is reviewed for an abuse of discretion. Ramos-Vasquez v. INS, 57 F.3d 857, 861 (9th Cir.1995).
 
 
 17
 2. Withholding of Deportation.
 
 
 18
 An applicant is entitled to withholding of deportation if he demonstrates a "clear probability of persecution." INS v. Stevic, 467 U.S. 407, 423-24 (1984). This is a higher hurdle than the asylum standard, which if met, makes withholding of deportation mandatory. INS v. Cardoza-Fonseca, 480 U.S. 421, 427-32 (1987); Singh, 63 F.3d at 1506. A denial of withholding of deportation by the Board is reviewed for substantial evidence. Berroteran-Melendez v. INS, 955 F.2d 1251, 1255 (9th Cir.1992). Under that standard, the factual findings underlying the Board's decision are "conclusive" if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4); Hartooni v. INS, 21 F.3d 336, 340 (9th Cir.1994).
 
 B. The Board's Asylum Determination
 
 19
 Solorzano-Lopez argues that the Board's decision was not supported by substantial evidence, and was an abuse of discretion.
 
 
 20
 1. Past Persecution.
 
 
 21
 Persecution, while not defined in the Act, has been judicially defined as "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive." Fisher, 79 F.3d at 961 (internal quotations omitted). Definitions are of limited utility, however. Whether the incidents in a given case amount to persecution is essentially a factual determination. Ghaly, 58 F.3d at 1429; Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993).
 
 
 22
 In Prasad v. INS, 47 F.3d 336 (9th Cir.1995), this court evaluated the case of an ethnic Indian citizen of Fiji following a military coup by ethnic Fijians. Prasad was detained by a group of ethnic Fijians who took him to a police station, questioned him about his support for the ethnic Indian-led Labour Party, hit him in the stomach and kicked him, then released him after 4-6 hours. Prasad did not require medical treatment and was not charged with any crime; there was no evidence of other, similar incidents. The court held that this incident was not "so overwhelming so as to necessarily constitute persecution." Id. at 339.
 
 
 23
 By contrast, in Desir v. Ilchert, 840 F.2d 723 (9th Cir.1988), the Haitian petitioner was arrested, threatened, and assaulted several times by Haitian security forces for refusing to pay the required bribes. He was also excluded from areas where he traditionally fished and sold items to tourists, so that he was unable to make a living. During the last incident of harassment, he was fired upon and told he would be shot if he appeared in the area again. The court held that these incidents amounted to persecution. Id. at 727-29.
 
 
 24
 Here, Solorzano-Lopez was harassed at school, fired from his job, deprived of his food ration card, and beaten by a mob of Sandinista youths.[2] While this evidence is more forceful than that in Prasad, it is not so powerful as to compel a finding of past persecution. See Elias-Zacarias, 502 U.S. at 481 (Board's finding should be upheld unless the evidence compels otherwise).
 
 
 25
 2. Likelihood of Present or Future Persecution.
 
 
 26
 Moreover, even if the evidence was sufficiently powerful to compel a finding of past persecution, we would affirm the Board's discretionary denial of asylum based on the small likelihood of future persecution. In Matter of Chen, Int.Dec. 3104 (BIA 1989), the Board held that a showing of past persecution creates a rebuttable presumption of persecution in the future. Id. at * 4. "The likelihood of present or future persecution then becomes relevant as to the exercise of discretion, and asylum may be denied as a matter of discretion if there is little likelihood of present persecution." Id.; see also Kazlauskas v. INS, 46 F.3d 902, 905-06 (9th Cir.1995) (likelihood of future persecution an important factor in discretionary determination following finding of past persecution). A showing of changed political conditions in the applicant's country can rebut the presumption. Matter of Chen at * 4.
 
 
 27
 News articles introduced into evidence by Solorzano-Lopez discuss the election of President Violeta Chamorro and her anti-Sandinista coalition government in April 1990.[3] The Board noted that the evidence contained in these articles shows that the Sandinistas continue to wield influence and power in the police and the military. However, the Board also noted the absence of any evidence that the Sandinistas, since the change in government, have tried to harm individuals because of their opposition to, or their refusal to participate in, the Sandinista government years earlier. The Board's finding that present or future persecution is unlikely was a proper basis for denying asylum even had Solorzano-Lopez experienced persecution in the past.
 
 
 28
 3. The Board's Exercise of Discretion.
 
 
 29
 Matter of Chen also teaches that even where there is little likelihood of present or future persecution, a "favorable exercise of discretion [may be] warranted for humanitarian reasons." Id. at * 5. Humanitarian reasons include past subjection to "atrocious forms of persecution." Id. (internal quotation omitted); see also Kazlauskas, 46 F.3d at 906-07; Acewicz, 984 F.2d at 1062. Solorzano-Lopez's experiences, however, were not so extreme as to warrant a favorable exercise of discretion for humanitarian reasons.
 
 
 30
 Nor did the Board improperly exercise its discretion by considering only the change of government in Nicaragua, and no other factors. See Matter of Chen at * 5 ("[A]s with any case involving the exercise of discretion, all other factors, both favorable and adverse, should also be considered, with recognition of the special considerations present in asylum cases."). Solorzano-Lopez cites his residence in the United States for over ten years and his United States citizen child as such favorable factors. While sympathetic, those factors are not highly relevant to an asylum application, and the Board did not abuse its discretion in giving them little weight.
 
 C. Withholding of Deportation
 
 31
 Given that his evidence does not satisfy the lower standard of demonstrating a "reasonable possibility" of persecution, Solorzano-Lopez has a fortiori failed to establish a "clear probability" of such persecution so as to qualify for withholding of deportation. Diaz-Escobar, 782 F.2d at 1492.
 
 
 32
 The petition for review is DENIED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 That provision then read:
 (a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who--
 * * *
 (2) entered the United States without inspection or at any time or place other than as designated by the Attorney General ...
 * * *
 8 U.S.C. § 1251(a)(2). That section has since been redesignated section 241(a)(1)(B), 8 U.S.C. § 1251(a)(1)(B). Immigration Act of 1990, Pub.L. No. 101-649, § 602, 104 Stat. 4978, 5082.
 
 
 [2]
 The IJ appears not to have credited Solorzano-Lopez's testimony about the beating, on the ground that he had omitted the incident from his initial asylum application. The Board, while noting the IJ's treatment, does appear to have weighed the incident in its analysis. This court reviews the Board's decision, not the IJ's. Acewicz, 984 F.2d at 1059
 
 
 [3]
 Solorzano-Lopez argues that the Board's discussion of the new government is based on administrative notice, and that such notice cannot serve as substantial evidence for asylum purposes. However, the Board did not rely on administrative notice: Solorzano-Lopez himself submitted the articles into the record