91 F.3d 153
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Marvin Jose MARENCO-CARVAJAL, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70075.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 13, 1996.
Decided July 11, 1996.
 
 1
 Before: REINHARDT and HALL, Circuit Judges, and MERHIGE, Senior District Judge.*
 
 
 2
 MEMORANDUM**
 
 I.
 
 3
 The denial of Marenco's asylum application was supported by substantial evidence. To be eligible for asylum, Marenco was required to demonstrate a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." See 8 U.S.C. §§ 1158(a), 1101(a)(42)(A).
 
 
 4
 Marenco was employed as a lawyer for the Nicaraguan Ministry of Labor in a region called Bluefields. He supervised 46 employees, and his job involved the certification of unions to represent workers in the area. Upon his appointment to this position in June of 1985, Marenco found that the workers in the Bluefields area were affiliated with non-Sandinista unions. Marenco was to affiliate these unions with the Sandinista party. He became aware that there was no legal basis upon which to force these unions to affiliate with the Sandinistas and he did not do so. Marenco was pressured by politicians and state security to affiliate the unions in the Bluefields area with the Central Sandinista Union and he received phone calls and threats from the Sandinistas and was called a "Contra."
 
 
 5
 In 1986, a non-Sandinista union in Bluefields, which Marenco had certified, the CUS Marine Union, held a demonstration which attracted other unions. The demonstration had a national and international impact. Marenco received further complaints concerning why he had legalized these unions that were in opposition to the government. The Sandinistas staged demonstrations at his home and office.
 
 
 6
 In August of 1986, Marenco was restricted in his travel by the Popular Sandinista Army to an area of 30 kilometers. Because of his complaints, these restrictions were lifted after three months, although he continued to receive threats.
 
 
 7
 In 1988, Marenco was summoned to a meeting in the office of Raoul Cordon, the Delegating Minister of the Interior. Members of the Central Sandinista Union and the Sandinista Front were also present. Marenco was told that his certification of the unions in Bluefields had established the opposition in the region. He was also told that he worked for the state and if he wanted to work for the opposition, he should quit his state position. He was further told that people who worked against the government had lost their lives. After this meeting, Marenco began to have his phone line intercepted and his picture taken and continuing pressure was exerted upon him to resign or annul the legalizations of the unions. In addition, Marenco was sent on a mission to Managua and was forced to travel by land, which caused him to have to travel through a war zone for five or six days. When Marenco complained, he was told that it was the people he supported who were at war, the Contras.
 
 
 8
 In September of 1988, Marenco was informed that he was to spend a month in Cuba to find out exactly how the unions work because he had already "forgotten" since his visit to Cuba in 1983. Marenco did not go to Cuba, but traveled by land to the United States.
 
 
 9
 Marenco is afraid to return to Nicaragua because of the threat of political revenge and because the Sandinista Front is still stronger than the new government, and they have taken reprisals against people who have left. Marenco is aware of several people who have been threatened, beaten and killed by the police because they were in favor of the new government. He believes that the problem will remain until the military structure in Nicaragua changes. Marenco is also fearful of those persons in the Bluefields region who have been politically displaced, and he fears that he would become a victim of political revenge if he were to return anywhere in Nicaragua.
 
 
 10
 Marenco has failed to establish past persecution. The only tangible action taken against Marenco was the temporary travel restrictions he faced. However, "persecution is an extreme concept that does not include every sort of treatment our society regards as offensive." Ghaly v. INS, 58 F.3d 1425, 1431 (9th Cir.1995) (internal citations omitted). Even assuming Marenco's past treatment constituted persecution on the basis of his political opinion, it was not severe enough to support an asylum claim in the absence of a well founded fear of future persecution. See Acewicz v. INS, 984 F.2d 1056, 1062 (9th Cir.1993) (asylum may be granted on the basis of past persecution, but only if the applicant has suffered "atrocious forms of persecution").
 
 
 11
 The determination of the Board of Immigration Appeals that Marenco did not have a well-founded fear of future persecution is supported by substantial evidence. The well-founded fear requirement includes both subjective and objective components. Hartooni v. INS, 21 F.3d 336, 341 (9th Cir.1994). The subjective component is met where the applicant for asylum presents "credible testimony that he genuinely fears persecution." Id. The objective component, however, is satisfied only if the applicant provides "credible, direct, and specific" evidence of facts that would support a reasonable fear of persecution. Ghaly, 58 F.3d at 1431.
 
 
 12
 Even if Marenco may have had a reasonable fear of future persecution at the time he left Nicaragua, he does not have such a well-founded fear at present. Manreco has not expressed any fear of the Chamorro government but, rather, had expressed fear of those persons who had previously held positions of power under the Sandinistas but no longer did so and were hostile to those, such as Marenco, who they perceived as having had something to do with the loss of power by the Sandinistas. Marenco has presented no objective evidence from which it could be concluded that the present government is unable or unwilling to control these persons. Marenco has failed to show that he would be "at particular risk" of persecution at the hands of Sandinistas were he to return to Nicaragua. See Kotasz v. INS, 31 F.3d 847, 852 (9th Cir.1994).
 
 II.
 
 13
 Because Marenco did not establish a well-founded fear of persecution, denial of withholding of deportation was also proper. INS v. Stevic, 467 U.S. 407, 424 (1984).
 
 
 14
 PETITION FOR REVIEW DENIED.
 
 
 15
 REINHARDT, Circuit Judge, concurring separately:
 
 
 16
 I concur in the result. While I believe that petitioner established past persecution and was entitled to the presumption of a fear of future persecution, the record establishes the changed country circumstances and the Immigration Judge analyzed and applied those changes to the specific facts of petitioner's case. His determination that the changes were sufficient to alleviate petitioner's objective fears was sufficiently supported by the record.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not suitable for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3