**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3749
_____

FISSEHA TESFAY GEBRMARYAM,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A209-237-836)
Immigration Judge: Walter A. Durling

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 24, 2019

Before: GREENAWAY, JR., RESTREPO and FUENTES, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 6, 2019)
_____

OPINION[*]
_____

PER CURIAM

Fisseha Tesfay Gebrmaryam petitions for review of an order of the Board of

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Immigration Appeals (BIA) denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We will deny in part and dismiss in part the petition.

I.

Gebrmaryam, an Eritrean citizen, crossed the Mexican border with his family near Hidalgo, Texas in July 2016. The Department of Homeland Security (DHS) determined that he was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien present without a valid entry document, and issued an expedited removal order. Gebrmaryam obtained representation by the Villanova University School of Law and applied for asylum, withholding of removal, and protection under the CAT. He claimed that he feared persecution and torture in Eritrea on account of his religion (Pentecostal Christian) and an imputed political opinion (anti-Eritrean due to his religion).

At his merits hearing, Gebrmaryam testified that prior to fleeing Eritrea, he had been imprisoned for over two years (from February 2007 to March 2009) on account of his religion and imputed political opinion. While imprisoned, he was beaten, forced to perform hard labor, and tied up outside in the sun. Gebrmaryam eventually escaped and fled to another region of Eritrea, but was recaptured there. He was detained for several days before crossing the border into Ethiopia. He met his wife in Ethiopia in 2012, and the couple had a daughter there in 2014. In April 2014, Gebrmaryam crossed into Sudan and lived there until July 2016, when a smuggler helped him and his family fly to Mexico. From there, he sought admission into the United States.

2

On cross-examination by the Government, Gebrmaryam stated that he had never traveled to any European countries or obtained refugee documents from any other nation. The Government, however, then produced a declaration by a Customs and Border Protection (CBP) officer stating that in 2008, Italy had granted Gebrmaryam and his wife permanent permits of stay. Gebrmaryam's counsel objected to the admission of the declaration, but the IJ allowed it.

After consulting with counsel, Gebrmaryam admitted that most of his prior testimony had been false. He conceded that he had moved to Italy in 2008 and had been granted permanent residency there. Gebrmaryam stated that he had married his wife in Italy, not Ethiopia, in 2012; that his daughter had been born in Italy; and that he and his family had lived there together for approximately eight years before leaving for the United States in July 2016. He explained that he left Italy because he had lost his job and could not find work.

The Immigration Judge (IJ) adjourned the hearing to provide Gebrmaryam's counsel time to determine the best way to proceed. When the parties reconvened the following month, counsel advised the IJ that Gebrmaryam did not wish to withdraw his applications for relief, and asked the court to rule on his claims without further development of the record.

The IJ denied all three applications based on his finding that Gebrmaryam's claim was fraudulent. With respect to Gebrmaryam's asylum application in particular, the IJ found that he was alternatively ineligible for asylum under the "firm resettlement" bar in

3

8 U.S.C. § 158(b)(2)(A)(vi). Accordingly, the IJ entered an order of removal.[1]

Gebrmaryam, no longer represented by counsel, filed a notice of appeal with the BIA challenging the IJ's reliance on the CBP officer's declaration in denying his application for asylum. Gebrmaryam also claimed in his notice of appeal that his due process rights had been violated insofar as he was denied a competent interpreter and was represented by inexperienced law students. Gebrmaryam later attempted to raise additional claims in a brief to the BIA, but the BIA rejected that brief as untimely under the applicable regulations. Therefore, the BIA limited its review of the IJ's decision to the errors Gebrmaryam had identified in his notice of appeal. Upon such review, the BIA rejected Gebrmaryam's objection to the CBP officer's declaration; found no clear error in the IJ's adverse credibility determination; noted that Gebrmaryam was in any event ineligible for asylum under the firm-resettlement bar; and concluded that Gebrmaryam's hearing comported with due process. Accordingly, the BIA dismissed the appeal.[2]

Gebrmaryam timely filed this petition for review.[3]

---

[1] The IJ considered making a finding that Gebrmaryam's asylum application was frivolous under 8 U.S.C. § 1158(d)(6), but declined to do so because Gebrmaryam had not been timely notified of the consequences of filing a frivolous application in accordance with the statute. See generally Luciana v. Att'y Gen., 502 F.3d 273, 281-83 (3d Cir. 2007). To the extent that Gebrmaryam argues before this Court that the IJ erred in entering a frivolousness finding, he misunderstands the IJ's ruling.

[2] Gebrmaryam subsequently moved the BIA to reopen/reconsider his appeal, arguing, inter alia, that the Board had erred in rejecting his brief. The BIA denied the motion on March 13, 2018. Because Gebrmaryam did not file a petition for review from the BIA's decision, this Court lacks jurisdiction to review it. See Camara v. Att'y Gen., 580 F.3d 196, 201 n.10 (3d Cir. 2009).

[3] On November 14, 2018, while this appeal was pending, immigration authorities removed Gebrmaryam to Italy.

4

II.

We have jurisdiction to review final orders of removal pursuant to 8 U.S.C.

§ 1252(a)(1). Where, as here, the BIA affirmed and partially reiterated the IJ's

determinations, we review both decisions. See Sandie v. Att'y Gen., 562 F.3d 246, 250

(3d Cir. 2009). We review the agency's factual findings, including an adverse credibility

determination, for substantial evidence, upholding the agency's findings "unless any

reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C.

§ 1252(b)(4)(B); see also INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

III.

We first address Gebrmaryam's contention that the BIA violated his due process

rights by refusing to accept his untimely brief. The BIA advised Gebrmaryam that his

brief was due by November 3, 2017, and that if he wished to obtain an extension, he must

request one by that time. (AR000006-7.) Gebrmaryam did not timely submit a brief or

request an extension. The Board ultimately received a brief on November 13, 2017, but

returned it to Gebrmaryam and advised him that if he wished it to be considered, he

should submit a motion seeking leave to file it out of time in accordance with the

regulations. See 8 C.F.R. § 1003.3(c)(1) (providing that "[t]he Board, upon written

motion, may extend the period for filing a brief or a reply brief for up to 90 days for good

cause shown"). He did not do so. Under these circumstances, we conclude that

Gebrmaryam received the process he was due. See, e.g., Singh v. Gonzales, 416 F.3d

1006, 1014–15 (9th Cir. 2005) (finding no due process violation when the appeal was

5

dismissed by the BIA because the alien failed to file a brief or request an extension after receiving notice of the filing requirements).

In light of this conclusion, we have jurisdiction to review only the claims that Gebrmaryam raised in his notice of appeal to the BIA. See 8 U.S.C. § 1252(d)(1); see also Zhi Fei Liao v. Att'y Gen., 910 F.3d 714, 718 (3d Cir. 2018) (explaining that an alien is required to exhaust his remedies by putting the Board on notice of issues being raised on appeal).

Gebrmaryam next challenges the IJ's decision to deny his applications for asylum and withholding of removal. To demonstrate eligibility for asylum, Gebrmaryam was required to credibly and persuasively establish that he is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see also Abdille v. Ashcroft, 242 F.3d 477, 482 (3d Cir. 2001). To qualify for withholding of removal, he was required to demonstrate that it is "more likely than not" that he would suffer persecution on account of one of the enumerated grounds. See Wu v. Ashcroft, 393 F.3d 418, 423 (3d Cir. 2005). Gebrmaryam argues that he met these burdens by testifying that he was imprisoned in his home country on account of his religious beliefs, and that while imprisoned, he was beaten, tortured, and psychologically abused. Gebrmaryam recognizes that the IJ rejected this testimony as incredible, but argues that the IJ should not have discredited his entire story simply because he "misstated" the "timeframe" of when the mistreatment took place. (Br. 4, 16.)

6

Substantial evidence supports the BIA's determination that the IJ's adverse credibility finding was not clearly erroneous. Under the REAL ID Act of 2005, an IJ may assess an applicant's credibility based on "the totality of circumstances, and all relevant factors," including "any inaccuracies or falsehoods in [the applicant's written and oral] statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1229a(c)(4)(C). In this case, Gebrmaryam initially testified that he had been imprisoned in Eritrea from February 2007 through March 2009 based on his religious practices. After the Government confronted him with the CBP officer's declaration, however, he admitted that he had in fact been living in Italy since 2008; that he had been granted permanent legal status there; and that he had come to the United States not to escape persecution, but because he was no longer able to find work in Italy.[4] Given these falsehoods, we cannot say that a reasonable adjudicator would be compelled to find that Gebrmaryam was credible. Accordingly, his challenge to the agency's denial of his claims for asylum and withholding of removal lacks merit.[5]

---

[4] Gebrmaryam argues that the admission of the CBP officer's declaration violated his due process rights because he was not "afforded the opportunity to challenge information provided by an unverified source." (Br. 27.) Even assuming that the declaration was admitted in error, however, Gebrmaryam has not demonstrated that he suffered any prejudice as a result of its admission in light of his testimony that the declaration was accurate. See United States v. Charleswell, 456 F.3d 347, 358 (3d Cir. 2006) (holding that, in order to demonstrate a due process violation, an alien must establish both that a fundamental error occurred and that the alien suffered prejudice therefrom).

[5] Gebrmaryam also appears to argue that the documentary evidence he submitted corroborated his testimony in support of his applications for asylum and withholding of removal. We may not consider this unexhausted argument. See 8 U.S.C. § 1252(d)(1).

7

Gebrmaryam next raises two due process claims: (1) that he was denied a competent interpreter during his merits hearings and when communicating with his attorneys; and (2) that the inexperienced law students who represented him provided ineffective assistance. We exercise plenary review over these claims. Singh v. Gonzales, 432 F.3d 533, 541 (3d Cir. 2006).

First, Gebrmaryam has failed to show that the IJ deprived him of due process by failing to provide him with a proficient translator during his merits hearings. While an asylum-seeker has the right to the services of a translator, see Marincas v. Lewis, 92 F.3d 195, 204 (3d Cir. 1996), an alien alleging a due process violation must show that the translator's incompetence prejudicially impacted his case, see Hartooni v. INS, 21 F.3d 336, 340 (9th Cir. 1994). Gebrmaryam did not raise any objections to the interpreter during the merits hearings, and he does not identify any specific translation errors now. We have reviewed the transcripts and conclude that Gebrmaryam participated meaningfully at the hearing, understood the questions asked of him, and was able to provide cogent responses. Accordingly, he has failed to establish a due process violation in this regard.

Gebrmaryam has likewise failed to demonstrate that his law-student counsel rendered ineffective assistance. To establish a due process violation based on ineffective assistance of counsel, Gebrmaryam must show that, but for counsel's errors, there is a reasonable likelihood that the result of the proceeding would have been different. See Fadiga v. Att'y Gen., 488 F.3d 142, 159 (3d Cir. 2007). The BIA denied Gebrmaryam's claim on the ground that he had not identified any specific errors that counsel made, and

8

had not shown that their manner of representation somehow affected the results of his case. We see no error in the BIA's determination. Although Gebrmaryam now raises additional arguments in support of his ineffectiveness claim, we may not consider these unexhausted allegations of error. See 8 U.S.C. § 1252(d)(1).

## IV.

Accordingly, the petition for review is denied. To the extent that Gebrmaryam raised claims that we lack jurisdiction to consider, the petition is dismissed.[6]

---

[6] The Government's Motion to Strike Exhibits from Petitioner's Opening Brief is granted. See 8 U.S.C. § 1252(b)(4)(A). The Government's Motion for Leave to File Supplemental Appendix, which is construed as a Motion to Expand the Record, is denied as unnecessary.