984 F.2d 1056
 Jan ACEWICZ, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
Henryk BRELYK, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
Albin CZYZ, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
Tadeusz NOGACKI, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
Andrzej ANDRZELACHAJ, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
Stanislaw RUSIECKI, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
Henryk WROBLEWSKI, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
Pawel WOSZEWSKI, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 Nos. 91-70257, 91-70379, 91-70323, 91-70402, 91-70467,
91-70469, 91-70534 and 91-70591.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Jan. 4, 1993.*
Decided Feb. 4, 1993.
 
 Maryann Di Re, Brink & Todd, Seattle, WA, for petitioners Acewicz and Wroblewski.
 Deborah K. Burlinski, Anchorage, AK, for petitioners Brelyk, Czyz, Nogacki, Andrzelachaj, Rusiecki, and Woszewski.
 Charles E. Hamilton, III, Alison R. Drucker, and Allen W. Hausman, U.S. Dept. of Justice, Washington, DC, for respondent.
 Petitions for Review of Decisions of the Board of Immigration Appeals.
 Before: WRIGHT, FARRIS and KLEINFELD, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 Each of these eight cases involves a Polish alien who seeks review of a decision of the Board of Immigration Appeals. In each case, the BIA affirmed the immigration judge's denial of the alien's application for asylum, under 8 U.S.C. § 1158(a), and for withholding of deportation, under 8 U.S.C. § 1253(h). The BIA entered final orders of deportation against each petitioner. We have jurisdiction to review those deportation orders pursuant to section 106 of the Immigration and Nationality Act, 8 U.S.C. § 1105a. We deny the petitions.
 
 BACKGROUND
 
 2
 The petitioners are natives and citizens of Poland who either entered the United States without inspection or remained in the United States beyond the time permitted by their visas. Each petitioner conceded his deportability at a hearing before an immigration judge in 1990, and each applied for asylum and withholding of deportation. The applications were based on each petitioner's belief that he would be persecuted upon his return to Poland due to his involvement with the Solidarity union movement during the 1980's, or in the case of two petitioners, a faction of Solidarity known as "Fighting Solidarity." Several applicants also asserted that asylum should be granted on the basis of past persecution. The applications were denied. The denials were affirmed by the Board of Immigration Appeals, in separate written opinions, in 1991.
 
 DISCUSSION
 I. SCOPE OF APPELLATE REVIEW
 
 3
 Several petitioners challenge the findings of the immigration judges who conducted their deportation hearings. For example, Czyz argues that the immigration judge improperly based his decision on evidence outside the record. We are limited, however, to reviewing the decision of the Board of Immigration Appeals. Castillo-Villagra v. INS, 972 F.2d 1017, 1023 (9th Cir.1992); Castillo v. INS, 951 F.2d 1117, 1120 (9th Cir.1991). Were we to ignore the limited scope of our review, and instead review directly the decision of an immigration judge, the petitioners would be deprived of the BIA's de novo review. Castillo, 951 F.2d at 1121.
 
 II. ADMINISTRATIVE NOTICE
 
 4
 In dismissing petitioner Nogacki's appeal, the BIA stated:
 
 
 5
 The Board takes administrative notice that the Communists no longer exclusively control Poland. Effective September 10, 1989, the Solidarity organization formally entered into the coalition government which is presently governing Poland. Further, on December 9, 1990, Lech Walesa, former chairman of Solidarity, was elected president of Poland with 74.7% of the vote in the first democratic presidential election in more than 60 years, and the country is predicted to emerge a stronger democracy. On December 22, 1990, Lech Walesa was sworn in as President of Poland. Next year parliamentary elections are projected to mark a further democratizing step in Poland's rapid governmental and economic changes, elections which will replace a legislature now configured to assure the communists a majority.
 
 
 6
 Given that Solidarity is now part of the coalition governing Poland, we find there no longer exists any basis for the respondent's claim that he has a well-founded fear of persecution by the Polish government due to his union-related activities.
 
 
 7
 Cert.Admin.Rec. 28-463-579 at 4-5. The BIA took virtually the same administrative notice in all eight cases. This appeal turns on whether it erred in taking notice of these facts.
 
 
 8
 The BIA, in its discretion, may: (1) warn of its intention to take administrative notice, (2) take administrative notice, and (3) allow rebuttal evidence against the proposition of which notice is taken. Castillo-Villagra, 972 F.2d at 1028. We review for an abuse of that discretion. Id.
 
 
 9
 In Castillo-Villagra, 972 F.2d at 1023, the BIA took administrative notice of the election of the president of Nicaragua. The Board determined that because the Sandinistas had been defeated, the threat to the petitioners, who were active in anti-Sandinista politics, had abated. Id. We reversed, holding that "[t]he Board erred in taking notice of the change of government without providing the petitioners an opportunity to rebut the noticed facts," and that the error denied the petitioners due process. Id. at 1029.
 
 
 10
 Although we have never ruled on the propriety of administrative notice in the context of the democratization of Poland, several other circuits have. In Kaczmarczyk v. INS, 933 F.2d 588, 594 (7th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991), the Seventh Circuit held that the BIA properly took notice of Solidarity's inclusion in Poland's governing coalition and of the fact that its supporters were no longer subject to persecution. We cited Kaczmarczyk with approval in Castillo-Villagra, quarreling only with the Seventh Circuit's conclusion that a motion to reopen deportation proceedings provides asylum applicants sufficient opportunity to rebut noticed facts. See Castillo-Villagra, 972 F.2d at 1029-30.
 
 
 11
 In Kapcia v. INS, 944 F.2d 702, 705-06 (10th Cir.1991), the Tenth Circuit held that the BIA: (1) properly noticed Solidarity's rise to power, and (2) reasonably inferred that the governing coalition would not persecute Solidarity members. The court found that the petitioners had ample opportunity to rebut either the noticed facts or the reasonable inferences drawn therefrom because they "were well aware of that issue prior to their appeal hearings before the Board." Id. at 706.
 
 
 12
 The Eighth and Third Circuits have also held that the Board may take administrative notice of Poland's new political climate. See Wojcik v. INS, 951 F.2d 172, 173 (8th Cir.1991); Janusiak v. INS, 947 F.2d 46, 48 & n. 1 (3d Cir.1991).
 
 
 13
 The petitioners contend that our decision in Castillo-Villagra compels a conclusion that they were denied due process. We reject the contention without retreating from our reasoning and holding in that case.
 
 
 14
 In Castillo-Villagra, the Board took notice of the election in Nicaragua without warning. 972 F.2d at 1029. The ouster of the Sandinistas occurred after the hearing before the immigration judge and after the submission of briefs to the BIA. The aliens were precluded therefore from presenting evidence to rebut the noticed facts and from disputing whether notice should be taken. See id. Moreover, the BIA failed to consider the applications on an individualized basis; it merely reviewed each applicant's record "to determine whether [his] case fell into the category of anti-Sandinista Nicaraguan asylum cases, not to determine whether the claim of well-founded fear in the particular case should be accepted." Id. at 1023.
 
 
 15
 We held that the BIA need not provide an opportunity to rebut facts that are "legislative, indisputable, and general," such as the fact that Chamorro won the presidency and her democratic party won a majority in parliament. Id. at 1029. We reversed because notice, and perhaps an opportunity to present contrary evidence and to dispute whether notice should be taken, was required as to whether the Sandinistas were truly without power and whether the applicants could have a well-founded fear of persecution despite the surprising election results. Id.
 
 
 16
 Reversal is not required here. The BIA was entitled to take notice of Solidarity's participation in the new coalition government and of Walesa's election, just as it noticed Chamorro's success in Nicaragua. Unlike the applicants in Castillo-Villagra, the petitioners had ample opportunity to argue before the immigration judges and before the Board of Immigration Appeals that their fear of persecution remained well-founded, despite Solidarity's ascendancy. In fact, the applicants, without exception, so argued. The following exchanges are representative:
 
 
 17
 Q. Sir, do you think the politics of Poland are such that you would now be in danger going back to a country basically controlled by Solidarity?
 
 
 18
 A. Yes, I feel I would be in danger because the police and the army [sic] still in the hands of communists.
 
 
 19
 Deportation Hr'g of Jan Acewicz, C.A.R. 28-531-838 at 66.
 
 
 20
 Q. All right, so what you're saying is that because you don't think that there really is any change in the communist control in Poland and you are a Solidarity supporter, you think you would be persecuted if you were to return to Poland right now.
 
 
 21
 A. Yes, I think I will be.
 
 
 22
 Deportation Hr'g of Andrzej Andrzelachaj, C.A.R. 28-463-491 at 44. Because the petitioners did in fact introduce evidence before the immigration judge on the effect of the change of government, their position is unlike that of the petitioners in Castillo-Villagra, who were deprived of that opportunity.
 
 
 23
 The transcripts of the several deportation hearings and the BIA's written decisions demonstrate that administrative notice was not "blindly appl[ied]" to "automatically deny every asylum application submitted by a Polish alien." Berroteran-Melendez v. INS, 955 F.2d 1251, 1257 (9th Cir.1992). Each applicant received a full opportunity to present his case. None was denied due process. The BIA did not abuse its discretion in taking administrative notice of the changed conditions in Poland and of the effect of those changes on petitioners' fear of persecution.
 
 III. DENIAL OF ASYLUM
 
 24
 We review the BIA's denial of asylum for an abuse of discretion. Abedini v. INS, 971 F.2d 188, 191 (9th Cir.1992); Berroteran-Melendez, 955 F.2d at 1255. Factual findings, including the determination that an alien has failed to prove his eligibility for asylum, are reviewed under the substantial evidence standard. Abedini, 971 F.2d at 191. Reversal is warranted only where the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution. INS v. Zacarias, --- U.S. ----, ---- - ----, 112 S.Ct. 812, 815-17, 117 L.Ed.2d 38 (1992); Abedini, 971 F.2d at 191.
 
 
 25
 Section 208(a) of the Refugee Act of 1980, 8 U.S.C. § 1158(a), gives the Attorney General discretion to grant asylum to an applicant who is unwilling to return to his native country because of past persecution or a "well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); Abedini, 971 F.2d at 191.
 
 A. Well-Founded Fear of Persecution
 
 26
 To establish eligibility for asylum based on fear of future persecution, an applicant must demonstrate both objective and subjective fear. Abedini, 971 F.2d at 191; Berroteran-Melendez, 955 F.2d at 1256. The subjective component may be satisfied by an applicant's credible testimony that he genuinely fears persecution. Berroteran-Melendez, 955 F.2d at 1256. The objective component requires a showing by "credible, direct, and specific evidence" of facts supporting a reasonable fear of persecution. Rodriguez-Rivera v. INS, 848 F.2d 998, 1002 (9th Cir.1988) (per curiam). The burden is on the applicant to establish his eligibility. Berroteran-Melendez, 955 F.2d at 1255.
 
 
 27
 Some of the petitioners may have demonstrated a genuine, subjective fear. None has shown that his fear is "well-founded."B. Past Persecution
 
 
 28
 Eligibility for asylum may be based on past persecution alone. Matter of Chen, Int. Dec. 3104 at 4 (BIA 1989). The BIA may grant asylum for humanitarian reasons, where an applicant or his family has suffered " 'under atrocious forms of persecution,' " even where there is little likelihood of future persecution. Id. at 5 (quoting The Handbook on Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees (Geneva 1979)).
 
 
 29
 Several petitioners claim they should be granted asylum under the Chen doctrine for "humanitarian reasons." We reject these claims. The applicant in Chen was a Chinese Christian whose father had been systematically tortured for eight years due to his religious beliefs. From age eight, Chen himself was tortured, harassed, and deprived of food and necessary medical attention.
 
 
 30
 Neither Acewicz nor Wroblewski, the two petitioners who expressly assert eligibility for asylum based on past persecution, has suffered atrocities that would justify relief on humanitarian grounds. Nor has any other petitioner demonstrated eligibility for relief under Chen.
 
 IV. DENIAL OF WITHHOLDING OF DEPORTATION
 
 31
 To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." INS v. Stevic, 467 U.S. 407, 413, 104 S.Ct. 2489, 2492, 81 L.Ed.2d 321 (1984). This standard is more stringent than the well-founded fear standard for asylum. Berroteran-Melendez, 955 F.2d at 1258. It requires a showing that it is more likely than not that the alien will be persecuted upon deportation. INS v. Cardoza-Fonseca, 480 U.S. 421, 430, 107 S.Ct. 1207, 1212, 94 L.Ed.2d 434 (1987). Petitioners failed to demonstrate a well-founded fear of persecution. Their proof does not meet the higher standard of a clear probability of persecution. Id.
 
 V. RIGHT TO COUNSEL
 
 32
 Aliens have the privilege of being represented by counsel, at their own expense, at deportation hearings. 8 U.S.C. § 1252(b)(2); United States v. Villa-Fabela, 882 F.2d 434, 438 (9th Cir.1989), overruled on other grounds by United States v. Proa-Tovar, 975 F.2d 592, 595 (9th Cir.1992) (en banc). In addition to this statutory privilege, due process entitles aliens to obtain counsel at their own expense. Villa-Fabela, 882 F.2d at 438. Aliens have no right to appointed counsel. Id.
 
 
 33
 INS regulations require immigration judges to: (1) notify an alien at his deportation hearing of his right to representation at no expense to the government; (2) advise him of the availability of free legal services in the district where the deportation hearing is held; and (3) ascertain whether the alien desires representation and has received a list of legal services programs. 8 C.F.R. § 242.16(a). Similar procedural protections are to be afforded aliens upon service of the Order to Show Cause, the order commencing the deportation proceedings. 8 C.F.R. § 242.1(c).
 
 
 34
 Several petitioners contend they were denied the benefit of these regulations because the lists of legal services programs were inadequate. We reject this contention.
 
 
 35
 Violation of an INS regulation will only invalidate deportation proceedings where the violation prejudices the interests of the alien. United States v. Cerda-Pena, 799 F.2d 1374, 1377 (9th Cir.1986). "Infringements of the right to counsel are prejudicial" when counsel "could have better marshalled specific facts or arguments in presenting the petitioner's case for asylum or withholding of deportation." Villa-Fabela, 882 F.2d at 439.
 
 
 36
 Each petitioner was apprised of his right to representation, and each chose to proceed without counsel. Prior to this appeal, no petitioner indicated that he had difficulty locating an attorney, or that the list of legal services was inadequate. And although some petitioners now argue that they did not understand "the nature of the American judicial or administrative systems," none argues that he did not comprehend his right to representation, and none argues that his waiver of the right was involuntary. Nor have we been shown any way in which counsel might have obtained a different result by a more skillful marshalling of facts and arguments in these cases. Cf. Cerda-Pena, 799 F.2d at 1379 ("mere showing that the alien would have availed himself of the procedural protections denied him is not enough").
 
 VI. MISCELLANEOUS DUE PROCESS CLAIMS
 A. Bias
 
 37
 Andrzelachaj, Czyz, Rusiecki, and Woszewski claim that Immigration Judge Josephson was biased or predisposed to reject their petitions. They cite questions by him concerning economic and political conditions in Poland, questions which were undoubtedly directed toward determining the existence of a subjective fear of persecution in Poland and an objective basis for that fear. These questions show only fair and proper questioning, not bias.
 
 B. Deportability
 
 38
 Andrzelachaj claims a failure to understand the Master Calendar appearance form on which he conceded his deportability because it was written in English. However, he conceded his deportability in his initial asylum application, which he completed with the help of a translator. Further, Andrzelachaj stated at his deportation hearing that he understood that he had previously conceded his deportability.
 
 
 39
 Brelyk argues that he was prejudiced because his Order to Show Cause was amended to change the basis for his deportability. Brelyk conceded deportability. The basis for that deportability was irrelevant to the outcome of the asylum proceedings.
 
 C. Inadequate Translation
 
 40
 Petitioners Andrzelachaj and Nogacki allege they were denied due process because the translation services provided at their deportation hearings were inadequate. To succeed, they must show that a better translation would have made a difference in the outcome of the hearing. Tejeda-Mata v. INS, 626 F.2d 721, 727 (9th Cir.1980), cert. denied, 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982).
 
 
 41
 The translators were sworn in accordance with 8 C.F.R. § 242.12. Andrzelachaj and Nogacki each cite isolated passages of garbled testimony. Neither cites instances in which an incorrect or incomplete translation prevented him from presenting relevant evidence. The record reveals a complete and adequate translation. Neither petitioner indicated that he was having difficulty understanding the questions, and both provided responsive answers. The BIA did not err in rejecting this claim.
 
 D. Inadequate Notice
 
 42
 Brelyk and Rusiecki assert they were denied due process because they were given only one day's notice of their deportation hearings. The petitioners must show that earlier notice could have affected the outcome. See Cerda-Pena, 799 F.2d at 1378.
 
 
 43
 The petitioners consented to the hearing date and did not request additional time. They have not argued that the time constraint prevented them from presenting relevant evidence.
 
 
 44
 PETITIONS DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4