56 F.3d 71
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Ronald Albrecht LEMME, Petitioner-Appellant,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent-Appellee.
 No. 94-70089.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 11, 1995.
Decided May 11, 1995.
 
 Before: POOLE, BOOCHEVER and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Petitioner Ronald Albrecht Lemme appeals from an order of the Board of Immigration Appeals ("BIA") affirming the denial of his petition for asylum and withholding of deportation. For the reasons set forth below, we affirm the BIA decision.
 
 FACTS AND PROCEDURAL HISTORY
 
 3
 Ronald Albrecht Lemme is a 29-year old citizen of Germany. Just prior to German re-unification, he resided with his parents in the town of Winterfeld in the former East Germany.
 
 
 4
 On May 12, 1989, Ronald's parents obtained exit visas from the former East German authorities, ostensibly to attend a family wedding anniversary celebration in West Germany. The government denied Ronald's contemporaneous visa application in order to provide some assurance that his parents would return. They did not. Instead, Mr. and Mrs. Lemme eventually fled Germany and subsequently entered the United States where they were granted asylum. They settled, and currently reside, in Seattle, Washington.
 
 
 5
 A few days after his parents departed, Ronald drove the family car from East Germany into Czechoslovakia. He then tried to cross the Czech border into West Germany, but was apprehended by the Czech border patrol. Ronald was beaten twice while in the custody of the Czech border guards. He was eventually turned over to the East German authorities, at whose hands, according to Ronald, he sustained a third beating.
 
 
 6
 Ronald was tried and convicted for attempting to cross a border into a non-Communist country, and was sentenced to 21 months in jail. After serving only about six months of his sentence, however, Ronald was released on or about November 12, 1989, during an amnesty period brought about by the collapse of the East German government. Although he lost approximately 30 pounds, Ronald was neither beaten nor harmed physically during his confinement.
 
 
 7
 After his release from jail, Ronald returned to the family home in Winterfeld only to discover that most of the rooms had been closed off and "sealed." Ronald broke the seals on the door to his father's office and retrieved his identification documents, diplomas, and other important records. He then freely drove into West Germany through the newly-opened border, received his 50 Deutsche marks "welcome money," and obtained a West German passport.
 
 
 8
 Shortly thereafter, Ronald flew to the United States in the company of his uncle, who is a legal U.S. resident, to rejoin his parents in Seattle. Ronald and his uncle arrived in the United States on December 1, 1989. Ronald obtained the standard three-month, nonimmigrant visitor visa, which authorized his stay until March 1, 1990. On February 12, 1990, however, Ronald submitted a request for asylum to the Immigration and Naturalization Service ("INS"). His application was denied, and the INS initiated deportation proceedings, issuing an Order to Show Cause ("OSC") on May 14, 1990.
 
 
 9
 In an oral decision rendered on March 4, 1991, the Immigration Judge ("IJ") concluded that "[t]here is simply insufficient evidence to establish [Ronald's] claim of a well-founded fear of persecution." Further, the IJ found that Ronald was ineligible for statutory withholding of deportation.
 
 
 10
 The BIA affirmed the IJ, and dismissed Ronald's appeal. After its review of the record, the BIA noted that even though Ronald "subjectively fears persecution from the former East German secret police...he has not explained why he could not live freely in any of the former West German states." Because Ronald had obtained a West German passport, received funds to support himself in West Germany, and could have travelled and settled anywhere in Germany prior to his departure, the BIA concluded that a reasonable person would not fear persecution in Germany. Further, the BIA dismissed Ronald's petition for discretionary asylum on the ground of past persecution, noting that Ronald was not obligated to return to former East Germany and, as such, he had no basis to fear persecution from the unified German government.
 
 ANALYSIS AND DISCUSSION
 
 11
 I. Ronald did not establish a well-founded fear of persecution in the unified Germany.
 
 
 12
 We review the factual determinations made by the BIA regarding an alien's well-founded fear of persecution under the substantial evidence standard. Sarvia-Quintanilla v. INS, 767 F.2d 1387, 1393 n.3 (9th Cir. 1985). To obtain reversal of a BIA decision, the asylum applicant must show that the evidence presented was so compelling that no reasonable fact finder could fail to find a well-founded fear of persecution. INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).
 
 
 13
 This Court defines persecution as the "infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive." Cardoza-Fonseca v. INS, 767 F.2d 1448, 1452 (9th Cir. 1985). In making a determination of an alien's well-founded fear of persecution, a fact finder must consider both objective and subjective factors.
 
 
 14
 The subjective component can be established by the asylum applicant's credible testimony that he genuinely fears persecution. Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir. 1993). On the other hand, the objective component requires "credible, direct and specific evidence" of facts supporting a reasonable fear of persecution on the relevant ground. Shirazi-Parsa v. INS, 14 F.3d 1424, 1427 (9th Cir. 1994). No evidence was presented that would indicate a likelihood that Lemme would be subject to such mal treatment in the future upon his return to the now unified Germany.
 
 
 15
 Here, the BIA's factual determinations are supported by substantial evidence. First, while Ronald's beatings and subsequent imprisonment were unfortunate, it can hardly be said that they rise to a level of persecution under the Ninth Circuit standard. Moreover, two of the three beatings that he reportedly sustained during his failed flight attempt were inflicted by Czech police, not by agents of his home government.
 
 
 16
 The IJ found Ronald's testimony regarding his subjective fear of persecution to be sincere and credible. However, Ronald did not offer any direct or specific evidence sufficient to support a reasonable fear of future, individualized persecution at the hands of the unified German government. Ronald expressed concern that the former officials of the secret police, who hold positions of authority within the unified government, would not be "willing to give up the fight to build communism." However, he offered no evidence to show how any lingering communist sentiments had blossomed into active, government-sponsored persecution of individuals who had attempted escape from the former East Germany.
 
 
 17
 Further, the IJ concluded--and the record supports the conclusion--that Ronald's persecution claim was "rather speculative," and that he seemed more concerned about his economic well-being in unified Germany. As such, Ronald failed to distinguish his plight from that of millions of other former East Germans who struggle to achieve economic parity with their West German counterparts. Thus, we affirm the BIA's determination that Ronald failed to establish a well-founded fear of persecution.
 
 
 18
 II. The BIA did not err by refusing to grant Ronald asylum based on past persecution.
 
 
 19
 The ultimate decision to deny asylum, or withholding of deportation, is reviewed for an abuse of discretion. Vides-Vides v. INS, 783 F.2d 1463, 1466 (9th Cir. 1986).
 
 
 20
 In its discretion, the BIA may grant asylum "for humanitarian reasons, where an applicant or his family has suffered 'under atrocious forms of persecution,' even where there is little likelihood of future persecution." Acewicz, 984 F.2d at 1062 (quoting Matter of Chen, Int. Dec. 3104, at 4 (BIA 1989)).
 
 
 21
 Ronald relies on the BIA's decision in Matter of Chen to support his claim to asylum on the basis of his demonstrated past persecution. However, given the distinction between the levels of abuse asserted by Ronald and that suffered by Chen, we conclude that the BIA acted well within its discretion in denying Ronald asylum on the basis of past persecution. See Acewicz, 984 F.2d at 1062 ("The applicant in Chen was a Chinese Christian whose [minister] father had been systematically tortured for eight years due to his religious beliefs. From age eight, Chen himself was tortured, harassed, and deprived of food and necessary medical attention.").
 
 CONCLUSION
 
 22
 The BIA's determination that Ronald Lemme did not establish a well-founded fear of persecution on the basis of political opinion is supported by substantial evidence. Thus, the ultimate decision to deny his asylum application on the basis of future or past persecution was not an abuse of discretion.
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3