67 F.3d 305
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gheorhge BALAESH; Elena Balaesh; Delia Daniela Balaesh;
George Victor Balaesh, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70069.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 13, 1995.
Decided Sept. 27, 1995.
 
 Before: SCHROEDER, REINHARDT, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Gheorghe Balaesh, a native and citizen of Romania, petitions for review of the Board of Immigration Appeals' affirmance of the immigration judge's decision denying his application for asylum pursuant to 8 U.S.C. Sec. 1158(a) and for withholding of deportation pursuant to 8 U.S.C. Sec. 1253(h). We deny the petition.
 
 DISCUSSION
 
 3
 Under Section 208(a) of the Immigration and Nationality Act, the Attorney General has discretion to grant asylum to an alien qualifying as a "refugee." 8 U.S.C. Sec. 1158(a). A refugee is a person who is unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. Sec. 1101(a)(42)(A). The statutory test for asylum eligibility is not as rigorous as that for withholding of deportation. It has both a subjective and an objective component. Subjective fear is established by candid, credible, and sincere testimony demonstrating a genuine fear of persecution. See Blanco-Comarribas v. INS, 830 F.2d 1039, 1042 (9th Cir.1987). Objective fear is demonstrated through showing, by credible, direct, and specific evidence, facts that would support a reasonable fear of persecution. See Estrada-Posadas v. INS, 924 F.2d 916, 918 (9th Cir.1991). An alien's uncorroborated testimony will suffice to establish a well-founded fear if it is credible, persuasive, and specific. Id. at 918-19.
 
 
 4
 Balaesh argues that he will face persecution based on his political opinion, but the evidence does not compel the conclusion that Balaesh established a well-founded fear. See Elias-Zacarias v. INS, 502 U.S. 478, ----, 112 S.Ct. 812, 817, 117 L.Ed.2d 38 (1992). Both the BIA and the IJ noted that the repressive Ceausescu regime had fallen in December 1989, several months before Balaesh and his family left Romania. The Board mentioned the conclusions of the State Department's Country Report for Romania for 1990, which was in the record, that the Securitate had been dissolved and the first multiparty election since 1946 had been held. The BIA properly relied on the Country Report to make its determinations. See Acewicz v. INS, 984 F.2d 1056, 1060-61 (9th Cir.1993); Getachew v. INS, 25 F.3d 841, 845 (9th Cir.1994). Balaesh himself testified that the new government had granted him a passport, when just a year earlier he would have had "worse luck" in obtaining one. Cf. Rodriguez-Rivera v. INS, 848 F.2d 998, 1006 (9th Cir.1988); Saballo-Cortez v. INS, 761 F.2d 1259, 1264 (9th Cir.1985). His pilot's job, which had been taken away by the old regime, was also restored. Balaesh's claims that nothing in Romania has changed and that he will be subject to persecution are not supported by compelling evidence.
 
 
 5
 "Absent a likelihood of future persecution, asylum is warranted for 'humanitarian reasons' only if [the alien] demonstrates that in the past '[he] or his family has suffered under atrocious forms of persecution.' " Kazlauskas v. INS, 46 F.3d 902, 906 (9th Cir.1995) (quoting Acewicz, 984 F.2d at 1062) (internal quotations and citation omitted). Balaesh argues that, after his brother defected in 1984, he was subjected to "persecution" by the state police, who questioned him "about every month or so sometimes twice a month they question me." He also testified that he was beaten once in 1984 and jailed for one day, and that he lost his job as a pilot after his brother defected. However, even during the Ceausescu regime his standard of living was "very good." He admitted to the IJ that he lived in a state-owned four bedroom apartment, that he was paid about three times more than the average salary for an engineer (even when he was a driving instructor), and that his children were as well off as other Romanian children. He was not treated atrociously, nor was his family.
 
 
 6
 Since Balaesh has failed to satisfy the lower burden of proof required for asylum, it follows that he has also not satisfied the stricter clear probability standard for withholding of deportation. See Berroteran-Melendez v. INS, 955 F.2d 1251, 1258 (9th Cir.1992).
 
 
 7
 The petition for review is DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3