103 F.3d 139
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Victor Manuel MOLINA-MEJIA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent
 No. 95-70109.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 4, 1996.
Decided Nov. 20, 1996.
 
 1
 Before: SKOPIL and FLETCHER, Circuit Judges, and RHOADES,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Victor Manuel Molina-Mejia, a native and citizen of Nicaragua, petitions for review of a final order by the Board of Immigration Appeals ("Board"). The Board affirmed the decision of an Immigration Judge ("IJ") which found Molina-Mejia deportable, denied his applications for asylum and withholding of deportation, and granted him voluntary departure in lieu of deportation. Because substantial evidence supports the Board's determination that Molina-Mejia failed to establish either past persecution or a well-founded fear of persecution on account of his political opinion, we affirm the Board's decision and deny Molina-Mejia's petition.
 
 I. FACTS
 
 4
 Molina-Mejia is a native and citizen of Nicaragua who entered the United States on or about December 12, 1988, near Brownsville, Texas, without inspection. At a hearing before the Immigration Court, Molina-Mejia conceded deportability but requested an opportunity to renew his previously filed applications for asylum or withholding of deportation under 8 U.S.C. §§ 1158, 1253(h). In the alternative, Molina-Mejia requested voluntary departure under 8 U.S.C. § 1254(e). After the hearing, the IJ issued an oral decision denying Molina-Mejia's applications for asylum and withholding of deportation and granting his request for voluntary departure. Upon Molina-Mejia's appeal, the Board issued an order affirming the IJ's denial of asylum and withholding of deportation "for the reasons set forth in [the IJ's] decision" and dismissing Molina-Mejia's appeal. The Board also granted Molina-Mejia voluntary departure within one month in lieu of deportation. Molina-Mejia now appeals from the Board's order.
 
 
 5
 In his applications for asylum or withholding of deportation, Molina-Mejia asserted that he does not wish to return to Nicaragua because he believes he "will be imprisoned or killed" as a military deserter. Before the IJ, Molina-Mejia testified that he does not want to return to Nicaragua because he deserted the military in 1988 and fears arrest, imprisonment, torture, or death because of his desertion.
 
 
 6
 Molina-Mejia testified that beginning in 1987, the Comites de Defensa Sandinista (Sandinista Defense Committees, or "CDS") pressured him to join a Sandinista-controlled union and to participate in CDS activities. He stated that the CDS verbally harassed him, vandalized his house, denounced him as a "counterrevolutionary," and kept him under "surveillance."
 
 
 7
 Molina-Mejia testified that the CDS mainly harassed him because of his refusal to report for military service as required by law. He was arrested and sentenced, without trial, to six months imprisonment for failure to report for military reserve duty. Molina-Mejia served three months of that sentence. He testified that while in prison he was "harassed" with bright lights, beatings, and electric shocks. He testified that during his three-month imprisonment he received 10 or 11 beatings. He stated that he was given water and was fed only once every three days. His only visitor during that time was his nephew, who used his military connections to gain access to the prison.
 
 
 8
 After three months, Molina-Mejia was released from prison, taken to the battle zone, and placed in a unit of military reservists. He testified that he was given a weapon but no military training. He remained in the military for two weeks, then deserted.
 
 
 9
 Molina-Mejia made his way back to Managua and found a factory job. The CDS resumed harassing Molina-Mejia, presumably because of his desertion (although they made no effort to have him arrested), so Molina-Mejia left Managua and went to his parents' home in the port town of Corinto. Two and a half months later, Molina-Mejia returned to Managua and found a job at a Sandinista-run factory. The CDS again pressured him to join a union and to fulfill his military duties, so he obtained a passport and exit visa and left Nicaragua.
 
 
 10
 Molina-Mejia acknowledges that a new government has been elected in Nicaragua, but claims that the Sandinistas still have power and that his wife has told him the CDS are still active. Molina-Mejia submitted newspaper articles describing the political and social climate in Nicaragua to support his claims that the Sandinistas still control the military and the police, and that his return would subject him to accusations that he was involved in contra activities. He also submitted the oral and written testimony of his nephew, Orlando Molina Espinoza, who testified with considerable inconsistency that he visited Molina-Mejia in prison, that Molina-Mejia was (or was not) beaten in front of him, and that Molina-Mejia was subjected to "psychological" torture during his incarceration.
 
 
 11
 The IJ found that Molina-Mejia failed to meet his burden of proving eligibility for asylum or withholding of deportation. Although the IJ found credible that portion of Molina-Mejia's testimony claiming that he was imprisoned for refusing to perform mandatory military service, that he subsequently was forced into military service, and that he then deserted, he held that imprisonment based on failure to perform mandatory military service is not necessarily persecution on account of a qualifying basis for asylum. The IJ expressed reservations regarding the credibility and consistency of Molina-Mejia's testimony as a whole, and found that Molina-Mejia's testimony regarding the physical and psychological torture he allegedly suffered while in prison was not "sufficiently credible, detailed, reasonable, and complete enough to establish eligibility for asylum on the grounds of past persecution."
 
 II. STANDARD OF REVIEW
 
 12
 Our review is limited to the Board's decision. However, because the Board rested its decision on the IJ's findings, we treat the IJ's findings as the Board's and review the IJ's decision. Gonzalez v. INS, 82 F.3d 903, 907 (9th Cir.1996). We must uphold the IJ's determination that Molina-Mejia was not eligible for asylum if that decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4). Reversal is proper only if "a reasonable factfinder would have to conclude that the requisite fear of persecution [on account of political opinion] existed." INS v. Elias-Zacarias, 502 U.S. 475, 481 (1992). Molina-Mejia's evidence not only must support such a conclusion, it must compel it. Id. at 481 n. 1.
 
 
 13
 We also must uphold an IJ's finding that an asylum applicant's evidence was not credible unless the evidence presented compels a reasonable factfinder to reach a contrary result. Lopez-Reyes v. INS, 79 F.3d 908, 911 (9th Cir.1996).
 
 III. DISCUSSION
 
 14
 Neither Molina-Mejia's testimony nor his application for asylum demonstrates that he has been persecuted or faces persecution on account of his political opinion. The IJ accepted Molina-Mejia's testimony that he was imprisoned for three months for failure to report for military service and that when he was forcibly conscripted, he deserted. However, the IJ found that "neither of these circumstances are sufficiently related to a qualifying cause for asylum to establish eligibility for that relief."
 
 
 15
 Molina-Mejia's testimony regarding his opposition to the Sandinista regime was vague. He testified that he refused to participate in Sandinista-controlled activities, such as unions and neighborhood patrols, and that he was denounced by the CDS for this refusal. He also testified that he refused to report for service in the military reserves, although the law required him to do so. Molina-Mejia testified that he refused to report for military duty "[b]ecause I was not in agreement with any of the Marxist-Leninist ideology that they have and I was not in agreement with participating in any other activities, especially during the army."
 
 
 16
 Nevertheless, Molina-Mejia did not provide any evidence that he was singled out for military service because of his political opinion or that the six-month sentence he received for failure to report for duty was a disproportionate or unusual punishment. Although Molina-Mejia did claim that during his imprisonment he was beaten "about 10 or 11 times," subjected to electric shock treatment, and deprived of food, the evidence he submitted to support this claim, other than his own testimony, was the vague and inconsistent testimony of his nephew, Orlando Molina Espinoza. Espinoza first stated that he did not see Molina-Mejia being beaten, then stated that on both of his visits to the prison Molina-Mejia was beaten in front of him. Neither Molina-Mejia nor Espinoza provided any dates or details regarding these beatings.
 
 
 17
 In his oral opinion, the IJ coupled his doubts about the evidence of torture (finding it "not sufficiently detailed, credible, reasonable, and complete enough to support eligibility for asylum") with his doubts that the current government in Nicaragua would persecute Molina-Mejia for military desertion and his view that any past persecution Molina-Mejia experienced was not as severe as that documented in Matter of Chen, Int.Dec. 3104 (BIA 1989).[1] The Board treated this portion of the IJ's opinion as an "adverse credibility finding." On balance, substantial evidence supports the IJ and Board's view that Molina-Mejia was trying to avoid military service, not to oppose the government's political views, and that he was imprisoned and not seriously mistreated because he refused to report for military duty.
 
 
 18
 Molina-Mejia also testified that he fears returning to Nicaragua because he is a military deserter. Being imprisoned for desertion is not a recognized basis for asylum.
 
 
 19
 Moreover, since Molina-Mejia left Nicaragua, Violeta Chamorro has defeated the Sandinistas in a democratically-held election. The new government has lifted the mandatory military service law. In his testimony, Molina-Mejia acknowledged these changes, but claimed that the Sandinistas still control the police and the military. He did not provide any evidence to support his claim that he will be punished as a deserter if he returns, let alone persecuted, or that the Sandinistas retain the power to "harass" citizens as the CDS harassed Molina-Mejia in the past.[2] Finally, the fact that Molina-Mejia's family remains in Nicaragua and has not been harmed further weakens his claim that he will be persecuted if he returns. The IJ was entitled to rely on Nicaragua's changed political climate as evidence supporting his conclusion that Molina-Mejia did not objectively establish a well-founded fear of persecution on account of his political opinion. Acewicz, 984 F.2d at 1061.
 
 
 20
 Molina-Mejia argues that the Board incorrectly found that the IJ rendered an "adverse credibility finding" regarding Molina-Mejia's testimony. Molina-Mejia does not appear to challenge the IJ's credibility finding itself, but rather the Board's determination that the IJ's credibility finding was negative. The IJ's oral opinion was somewhat ambiguous. Nevertheless, we conclude that the Board accurately characterized the IJ's view of Molina-Mejia's testimony.
 
 
 21
 The IJ considered Molina-Mejia's testimony along with his applications for asylum and withholding of deportation, the testimony and affidavit of Molina-Mejia's nephew, and various documents submitted by Molina-Mejia. The IJ found "some difficulty in dates and other matters" in Molina-Mejia's evidence. The IJ noted discrepancies between Molina-Mejia's testimony and his Spanish-language affidavit regarding the date of Molina-Mejia's imprisonment, conscription, and desertion. The IJ also noted inconsistencies between Molina-Mejia's testimony and his application about when he sought papers to leave Nicaragua and quit his job.
 
 
 22
 The IJ stated that he was "willing to accept [Molina-Mejia's] testimony that he was imprisoned for three months for failure to report for required military service and his further testimony that when he was taken for military service, he promptly deserted." This was the only portion of Molina-Mejia's testimony that the IJ accepted as unqualifiedly credible and, as we already have discussed, it did not establish Molina-Mejia's eligibility for asylum. With regards to Molina-Mejia's "allegations of psychological and physical torture ... during his three months imprisonment," the IJ found Molina-Mejia's testimony not to be "sufficiently credible, detailed, reasonable, and complete enough to establish eligibility for asylum on the grounds of past persecution," although he coupled that conclusion with other considerations not related to credibility.
 
 IV. CONCLUSION
 
 23
 Substantial evidence on the record supports the IJ's decision that Molina-Mejia did not qualify for asylum on the basis of either past persecution or a well-founded fear of persecution on account of his political opinion. Because Molina-Mejia has failed to establish his eligibility for asylum, it follows that he has failed to satisfy the more stringent standard for withholding of deportation. The decision of the Board therefore is AFFIRMED.
 
 
 
 *
 Honorable John S. Rhoades, Senior United States District Judge for the Southern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The United States, in its brief for the Respondent, summarizes the treatment giving rise to the decision in Matter of Chen:
 [Chen's] father was dragged through the streets, compelled to write daily confessions of crimes, pushed into a bonfire of burning Bibles and imprisoned, and who, himself, also suffered grievously, i.e., the Red Guards ransacked his home, locked him in a room with his grandmother for six months, and over a number of years interrogated him on a continuing basis, beat him, deprived him of food and medical care, and exiled him for re-education.
 Brief for Respondent at 29 (citing Matter of Chen, Int.Dec. 3104, at 6-7).
 
 
 [2]
 This court has stated that, in weighing an alien's claimed fear of persecution, the Board may take administrative notice of changed circumstances in the alien's country of origin as long as the alien is given an opportunity to rebut the noticed facts. Acewicz v. INS, 984 F.2d 1056, 1060-61 (9th Cir.1993); see also Castillo-Villagra v. INS, 972 F.2d 1017, 1029-30 (9th Cir.1992) (citing with approval Kaczmarcyk v. INS, 933 F.2d 588, 593-94 (7th Cir.1991) (holding that the Board may take administrative notice of changed country circumstances if it gives the alien an opportunity to rebut the noticed facts))
 The IJ did not base his decision solely on the changed government in Nicaragua. Both the IJ and the Board referred to Nicaragua's changed government only insofar as that issue was discussed on the record.
 Molina-Mejia testified that the Sandinistas retain control over the military and the police and that his wife has told him that the CDS remain active. Molina-Mejia also submitted numerous articles describing the political and social climate in Nicaragua since the election of President Chamorro. While these articles describe ongoing social and political unrest, none of the articles indicates that draft dodgers or deserters are being persecuted in Nicaragua. One article, dated March 14, 1990, states that desertions have plagued the Nicaragua military, but does not suggest that deserters have been punished.