104 F.3d 366
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Alexander SABAS-MENDOZA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70396.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 2, 1996.*
Decided Dec. 20, 1996.
 
 1
 Before: SKOPIL and FLETCHER, Circuit Judges, and RHOADES,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Pro se petitioner Alexander Sabas-Mendoza, a citizen of the Philippines, appeals the final decision of the Board of Immigration Appeals ("BIA") denying his claim to derivative U.S. citizenship and his request for asylum. We have jurisdiction under 8 U.S.C. § 1105a(a) and we affirm.
 
 
 4
 Alexander Sabas-Mendoza ("Sabas-Mendoza") arrived in the United States from the Philippines on May 8, 1992. He came as a non-immigrant visitor for pleasure under a six month visitor's visa originally set to expire on November 7, 1992. Sabas-Mendoza filed a petition for political asylum with the Immigration and Naturalization Service ("INS") on November 20, 1992. The INS notified Sabas-Mendoza on February 23, 1993 of its intent to deny asylum. The INS initiated deportation proceedings on May 7, 1993. Immigration Judge Philip P. Leadbetter conducted a hearing on August 12, 1994 and denied Sabas-Mendoza's claim for asylum, but granted voluntary departure on or before November 12, 1994. The Board of Immigration Appeals dismissed Sabas-Mendoza's appeal on April 13, 1995.
 
 
 5
 Sabas-Mendoza claims that he cannot return to the Philippines because members of the Reformed Armed Forces Movement (RAM) threatened to kill him. RAM is an insurgent military group that opposed the Aquino government for not taking a stronger stand against the Communists. Sabas-Mendoza was a member of RAM for two days in August 1987, when RAM forces attacked Camp Aguinaldo as part of an attempted coup. RAM seized the camp and sealed off all the gates. Sabas-Mendoza and members of his family were trapped inside. Sabas-Mendoza struck a bargain with RAM soldiers shortly after the attack; he agreed to join the uprising in exchange for the safe escape of his family. Government forces put down the coup the next day, and Sabas-Mendoza abandoned the insurgents.
 
 
 6
 Sabas-Mendoza did not have any further contact with RAM until January 1988. In January, RAM soldiers approached Sabas-Mendoza and attempted to persuade him to join their movement and to gather intelligence inside the camp. Sabas-Mendoza claims that the reason RAM targeted him was because he is a member of the AFP swimming team, a team of military swimmers. As a member of the team, Sabas-Mendoza was able to travel between various military camps rather easily. RAM hoped to recruit Sabas-Mendoza to engage in espionage in various military camps. Sabas-Mendoza resisted RAM's recruiting efforts.
 
 
 7
 RAM soldiers contacted Sabas-Mendoza again around July 1988 and reiterated their proposal. RAM soldiers threatened that if he refused to join, they would inform the government of his involvement in the August 1987 coup. Sabas-Mendoza refused to join the insurgents. RAM soldiers contacted Sabas-Mendoza fifteen months later in December 1989, but he still refused to join. The December 1989 meeting was the last time that Sabas-Mendoza had any contact with RAM recruiters.
 
 
 8
 Sabas-Mendoza went into hiding in December 1989. He moved to Panay, a city about 30 miles from Camp Aguinaldo, to work as a lifeguard in a private British sports club. He worked in the club for two and a half years until he came to the United States. RAM was unable to contact Sabas-Mendoza while he was working in the club; however, RAM soldiers have contacted Sabas-Mendoza's brother-in-law to inquire about his whereabouts.
 
 I. Asylum
 
 9
 The Immigration and Nationality Act, 8 U.S.C. § 1158(a), authorizes the Attorney General to grant asylum to an alien who is a "refugee" as defined in the Act, i.e., an alien who is unable or unwilling to return to his home country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (citing 8 U.S.C. § 1101(a)(42)(A)). Sabas-Mendoza petitioned for asylum on two of these grounds: membership in a particular social group and political opinion.
 
 
 10
 An alien bears the burden of establishing eligibility for asylum. Berroteran-Melendez v. INS, 955 F.2d 1251, 1255 (9th Cir.1992). Establishing a "well-founded fear" of persecution requires a showing of both a genuine subjective fear and an objectively reasonable fear. Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993). The alien's candid, credible, and sincere testimony showing a genuine fear of persecution satisfies the subjective component. See Blanco-Comarribas v. INS, 830 F.2d 1039, 1042 (9th Cir.1987). The objective component requires a showing by credible, direct, and specific evidence of facts supporting a reasonable fear of persecution. Id. Moreover, an alien's credible and persuasive testimony, standing alone, may establish eligibility for political asylum. Barraza Rivera v. INS, 913 F.2d 1443, 1449 (9th Cir.1990).
 
 
 11
 The Immigration Judge's factual findings, including whether Sabas-Mendoza had a well-founded fear of persecution, are reviewed for substantial evidence. Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir.1995). The BIA's determination that Sabas-Mendoza was not eligible for asylum must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Elias-Zacarias, 502 U.S. at 481 (quoting 8 U.S.C. § 1101a(a)(4)). This court can reverse the BIA only if the evidence presented by Sabas-Mendoza was such that a reasonable factfinder "would have to conclude that the requisite fear of persecution existed." Id. at 481 (citation omitted). To reverse the BIA's finding this court must conclude that the evidence not only supports that conclusion, but compels it--and also compels the further conclusion that Sabas-Mendoza had a well-founded fear that RAM would persecute him because of his membership in a particular social group or his political opinion. See id. n. 1.
 
 A. Political Opinion
 
 12
 The Supreme Court has ruled that refusal to join a rebel group does not in itself establish a prima facie case of persecution or fear of persecution on account of political opinion. The persecution contemplated by the statute must be on account of the victim's political opinion--not the persecutor's. Id. at 482. The mere refusal to take sides with a political faction is not an affirmative expression of political opinion. Id. at 483. The victim must establish a political motive for refusing to join the insurgents. See id. at 482. The victim must also establish that the rebels will persecute him because of his political opinion and not just because of his refusal to fight with them. Id. at 483.
 
 
 13
 There is nothing in the record to establish that Sabas-Mendoza held a political opinion or that he ever communicated his political views to RAM. The record does not indicate whether Sabas-Mendoza supports or opposes RAM's agenda. The only thing that is clear from the record is that Sabas-Mendoza did not want to be a member of RAM and that he did not want to spy for RAM in the Philippine military camps. Sabas-Mendoza states in his affidavit that he refused to join "because that's dangerous and it threatens the life and saftiness [sic] of my family." Fear of combat, fear of retaliation, or a desire to remain with family and friends are not political motives for purposes of qualifying for asylum. See Elias-Zacarias, 502 U.S. at 482. Moreover, the evidence in the record strongly suggests that RAM's motivation in recruiting Sabas-Mendoza was not influenced by his political views. Rather, RAM's motivation was its desire to advance its own strategic interests. Indeed, Sabas-Mendoza testified that the reason RAM sought to recruit him was because he had access to various military establishments as a member of the AFP swim team.
 
 B. Membership in a Social Group
 
 14
 Sabas-Mendoza argues in his brief that he "is a member of a particular group" (RAM) and that he is "being politically persecuted partly because of that membership." This flatly contradicts Sabas-Mendoza's testimony throughout the proceeding before the Immigration Judge. The uncontradicted evidence in the record shows that Sabas-Mendoza was a RAM member for, at most, a total of two days in 1987. Sabas-Mendoza was never listed as a RAM member. He presented no evidence that he has been perceived or identified as a RAM member.
 
 II. Derivative Citizenship
 
 15
 Sabas-Mendoza claims that he is entitled to U.S. citizenship under the Citizenship Clause of the Fourteenth Amendment because his parents were born in the Philippines during the territorial period. We disagree. We have held that "birth in the Philippines during the territorial period does not constitute birth 'in the United States' under the Citizenship Clause of the Fourteenth Amendment, and thus does not give rise to United States citizenship." Rabang v. INS, 35 F.3d 1449, 1452 (9th Cir.1994), cert. denied, 115 S.Ct. 2554 (1995).
 
 III. Conclusion
 
 16
 The evidence in the record does not support Sabas-Mendoza's claim to a "well-founded fear" of persecution on account of membership in a social group or political opinion. Sabas-Mendoza's claim that he is entitled to U.S. citizenship is untenable. The BIA's dismissal of petitioner's appeal is therefore
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 34-4
 
 
 **
 Honorable John S. Rhoades, Senior United States District Judge for the Southern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3