110 F.3d 67
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Tamara BANCILA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 96-70396.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 11, 1997.*
Decided March 13, 1997.
 
 On Petition for Review of an Order of the Board of Immigration Appeals, No. Aui-dzt-qwk.
 BIA
 REVIEW DENIED.
 Before: SNEED, LEAVY, and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Tamara Bancila, a native and citizen of Romania, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the order of an immigration judge ("IJ") denying her applications for asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. §§ 1158(a) and 1253(h). We review for substantial evidence. Kazlauskas v. INS, 46 F.3d 902, 907 (9th Cir.1995). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we deny the petition.
 
 
 3
 Bancila contends that the BIA erred by finding that she neither suffered past persecution nor had a well-founded fear of future persecution based on her opposition to the Communist party and her religious beliefs. This contention lacks merit.
 
 
 4
 To be eligible for a grant of asylum, an applicant must demonstrate that she has suffered past persecution, or has a well-founded fear of future persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). Under the substantial evidence standard, we must uphold the Board's denial of asylum unless an alien demonstrates that the evidence she presented was so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). To establish a well-founded fear of future persecution, applicants must show both a genuine subjective fear of persecution and an objectively reasonable fear. Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993). The objective component requires "a showing by 'credible, direct, and specific evidence' of facts supporting a reasonable fear of persecution" on account of one of the enumerated grounds. Id. (citation omitted).
 
 
 5
 Bancila testified that in 1974, the Communist party began asking her to become a party member and that she told them she did not share their political conviction.[1] She testified that a party official told her there would be consequences if she did not join and that her "family and all have (sic) to suffer." Bancila further testified that several years later she was questioned by the secret police concerning her association with a university professor opposed to the party as well as her own religious beliefs. She testified that she was asked to become an informant and was promised a better job and pay if she would inform on her friends and colleagues. Bancila testified that her desk at work was broken into twice and that she believed this was in retaliation for her refusal to join the party. She also testified that she was told by a sympathetic telephone worker that her phone was tapped. Finally, Bancila testified that after she did not return to Romania, the Party evicted her mother from the two-bedroom apartment she had shared with Bancila.[2]
 
 
 6
 The BIA held that these incidents did not amount to persecution, finding them more akin to harassment than to persecution. The BIA also noted that given the changed circumstances in Romania, Bancila did not have an objectively reasonable fear of future persecution.[3]
 
 
 7
 We agree that these incidents do not rise to the level of persecution, and affirm the BIA's conclusion that Bancila failed to establish either past persecution or an objectively reasonable fear of future persecution. See Saballo-Cortez v. INS, 761 F.2d 1259, 1265 (9th Cir.1984) (holding that petitioner's ability to remain fully employed and free from arrest undercut claim of persecution); See also Ghaly v. INS, 58 F.3d 1425, 1431 (9th Cir.1995) (distinguishing between persecution and mere discrimination or harassment). Bancila's contention that the current Romanian government is as oppressive as the former government was insufficient to demonstrate that she would be subject to a "particularized threat of persecution" apart from the general population.[4] See Kotasz v. INS, 31 F.3d 847, 851-52 (9th Cir.1994); see also Sanchez-Trujillo v. INS, 801 F.2d 1571, 1579 (9th Cir.1986). Because the standard for withholding of deportation is higher than the standard for a grant of asylum and because Bancila did not meet the lower standard for a grant of asylum, we affirm the BIA's denial of Bancila's request for withholding of deportation. See Acewicz, 984 F.2d at 1062.
 
 
 8
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because neither the IJ nor the BIA made an explicit finding regarding Bancila's credibility, we must accept Bancila's testimony as credible. See Hartooni v. INS, 21 F.3d 336, 342 (9th Cir.1994)
 
 
 [2]
 We need not address Bancila's contention that the IJ improperly took administrative notice of a housing shortage in Romania. In its de novo review, the BIA expressly found any alleged housing shortage irrelevant to Bancila's claim of persecution. See Ghaly v. INS, 58 F.3d 1425, 1430 (9th Cir.1995) (noting that our review limited to BIA's decision)
 
 
 [3]
 In 1989, the National Salvation Front ("the Front"), a political party declaring its goal to be a pluralistic democracy, overthrew Ceausescu and called for free elections. The Front was subsequently elected into power
 
 
 [4]
 To support this contention, Bancila submitted rebuttal evidence in the form of an affidavit from a former colleague and several newspaper articles