132 F.3d 40
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Daniel Saravia ROMERO, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 97-70273.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 15, 1997**
Decided Dec. 18, 1997.
 
 On Petition for Review of an Order of the Board of Immigration Appeals.
 Before SNEED, LEAVY, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Daniel Saravia Romero, a native and citizen of El Salvador, petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of his appeal of an immigration judge's denial of his application for asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a) & 1253(h). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a),[1] and we deny the petition for review.
 
 
 3
 We review the denial of asylum for an abuse of discretion. See Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993). We review the BIA's factual determinations for substantial evidence, see Sangha v. INS, 103 F.3d 1482, 1487 (9th Cir.1997), and will uphold the decision unless the evidence compels a contrary result, see INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1 (1992).
 
 
 4
 In late 1989, Frente Farabundo Marti para la Liberacion National ("FMLN") guerrillas forcibly recruited Romero from his parents' home in San Jorge. He was sixteen years old at the time. After ten days in an FMLN training camp, Romero escaped and moved to San Salvador. After four months, Romero moved back to San Jorge. Two months later, and nearly six months after his escape, a group of FMLN guerrillas came to his parents' home looking for Romero. He was not home at the time. Shortly thereafter, in July, 1990, Romero left El Salvador and entered the United States.
 
 
 5
 The BIA determined Romero failed to demonstrate that the FMLN guerrillas' recruitment efforts and related threats were motivated by the guerrillas' desire to harm Romero because of his political opinion, imputed political opinion, or any other statutorily protected characteristic. In addition, the BIA found there was inadequate evidence to support a finding that Romero had a well-founded fear of persecution should he return to El Salvador.
 
 
 6
 Romero's contention that the BIA improperly found his fear of persecution was not on account of his political opinion is without merit. To qualify for political asylum, Romero must demonstrate that he is unwilling to return to El Salvador because he suffered past persecution or has a " 'well-founded fear of [future] persecution on account of ... political opinion.' " Acewicz, 984 F.2d at 1061 (quoting 8 U.S.C. § 1101(a)(42)(A)). "Persecution" means "the infliction of suffering or harm upon those who differ ... in a way regarded as offensive," whether inflicted by the government or by those whom the government cannot or will not control. See Sangha, 103 F.3d at 1487 (internal quotations omitted). However, alleged persecution based solely on the refusal to join the ranks of a guerrilla organization does not constitute persecution on account of a petitioner's political opinion. See Elias-Zacarias, 502 U.S. at 482-84; Sangha, 103 F.3d at 1490.
 
 
 7
 Substantial evidence supports the BIA's determination that the guerrillas recruited Romero merely because they needed more young men and they later threatened Romero solely because he refused to join their ranks. See Elias-Zacarias, 502 U.S. at 482-84; Sangha, 103 F.3d at 1490 (stating "forced recruitment is not enough by itself to show that the persecutor acted 'on account of' [petitioner's] political views"). The evidence does not compel the conclusion that the guerrillas threatened or assaulted Romero because of his political opinion. See Elias-Zacarias, 502 U.S. at 483; Sangha, 103 F.3d at 1490-91.
 
 
 8
 Romero's contention that the BIA improperly denied his application in light of current country conditions is without merit. The BIA properly relied on the country report and noted that El Salvador has relatively successfully implemented the 1992 peace accords and demobilized guerrilla combat units. See Kazlauskas v. INS, 46 F.3d 902, 906 (9th Cir.1995) (noting that the State Department's country reports are accorded great weight).
 
 
 9
 Romero's contention that he was entitled to a presumption that he has a well-founded fear of future persecution is without merit. Romero is correct that once an applicant establishes past persecution, the applicant is entitled to a presumption that he or she also has a well-founded fear of future persecution. See Singh v. Ilchert, 63 F.3d 1501, 1510 (9th Cir.1995). Romero, however, cannot benefit from this presumption because he did not establish past persecution.
 
 
 10
 Because Romero failed to establish eligibility for asylum, he necessarily failed to meet the more stringent standard for withholding of deportation. See Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir.1995).
 
 PETITION FOR REVIEW DENIED.[2]
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") repeals 8 U.S.C. § 1105a and replaces it with a new judicial review provision to be codified at 8 U.S.C. § 1252. See IIRIRA § 306(c)(1), Pub.L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996), as amended by Act of Oct. 11, 1996, Pub.L. No. 104-302, 110 Stat. 3656. However, because the new review provision does not apply to petitioners whose deportation proceedings commenced before April 1, 1997, we continue to have jurisdiction over the instant petition under 8 U.S.C. § 1105a. See IIRIRA § 309(c)(1)
 
 
 [2]
 We do not consider petitioner's eligibility, if any, for relief under the Nicaraguan Adjustment and Central American Relief Act, Pub.L. No. 105-100, 111 Stat. 2160 (Nov. 19, 1997)